GUTH v. GUTH CHOCOLATE CO.

(Circuit Court of Appeals, Fourth Circuit. May 4, 1915.)

No. 1327.

TRADE-MARKS AND TRADE-NAMES ☞35—SALE OF GOOD WILL—RIGHT TO USE NAME.

G., widely known as a candy manufacturer and whose name was a valuable asset in connection with the business, transferred to a corporation organized by him certain property and rights, together with the good will and use of the name G., for the purpose of manufacturing and selling candies under the G. label. Afterwards he withdrew from the company and launched a new candy enterprise, in which he made his name prominent in every way, using his full name, instead of his surname only, as formerly. Held, that he was properly enjoined from using his name as a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. ☞35.

Right to use one's own name as trade-mark or trade-name, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357; Borden Ice Cream Co. v. Borden's Condensed Milk Co., 121 C. C. A. 205.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit by the Guth Chocolate Company against Charles G. Guth. Decree for complainant (215 Fed. 750), and defendant appeals. Affirmed.

George W. Lindsay and Richard B. Tippett, both of Baltimore, Md., for appellant.

Laurence A. Janney, of New York City (Emery, Booth, Janney & Varney, of New York City, on the brief), for appellee.

Before KNAPP, Circuit Judge, and WADDILL and CONNOR, District Judges.

KNAPP, Circuit Judge. We are satisfied with the disposition of this case by the court below and need only indicate our reasons for affirming the judgment.

1. It is well settled that a person who has adopted and used his surname as a trade-mark, or trade-name, may transfer the same with the good will of a business and thereby divest himself of the right to use his name in connection with such a business. In Russia Cement Co. v. Le Page, 147 Mass. 206, 17 N. E. 304, 9 Am. St. Rep. 685, a case of marked similarity to the one at bar, the rule is stated as follows:

"One who has carried on a business under a trade-name, and sold a particular article in such a manner, by the use of his name as a trade-mark or a trade-name, as to cause the business or the article to become known or established in favor under such a name, may sell or assign such trade-name or trade-mark when he sells the business or manufacture, and by such sale or assignment conclude himself from the further use of it in a similar way. * * * A person may be enjoined, therefore, from using his own name as a description of an article of his own manufacture, and from selling the article under that particular name, when he has parted with the right thus to apply it. * * * It is not upon the ground of the invasion of the trade-name adopted by another, but by reason of the contract he has made, that he is deprived of the right himself to use his name as all others of the same name may use theirs."

The kindred case of Le Page v. Russia Cement Co., 51 Fed. 943, 2 C. C. A. 557, 17 L. R. A. 354, dealing with substantially the same facts, states the proposition thus:

"It is equitable that a manufacturer or dealer, who has given reputation to any article, should have the privilege of realizing the fruits of his labors by transmitting his business and establishment, with the reputation which has attached to them, on his decease to his legatees or executors, or during his lifetime to purchasers; and it is also in accordance with the principles of law, and with justice to the community, that any trade-mark, including a surname, may be sold with the business or the establishment to which it is incident."

These cases have been frequently cited with approval, as, for example, in Royal Baking Powder Co. v. Royal, 122 Fed. 337, 346, 58 C. C. A. 499, 508, where Judge Lurton, speaking for the Sixth Circuit Court of Appeals, says:

"Where one has used his own name as a trade-name, and then parted with it, he may, of course, be enjoined from using his name in that business."

2. As to the sale in this case: When Guth organized the Guth Chocolate Company of Delaware, in 1909, to take over the business of the

Guth Chocolate Company of Baltimore, which had become insolvent, he transferred to the new corporation—the transaction taking the form of a resolution accepting his written offer of sale—certain specified property and rights, "together with the good will and use of the name Guth for the purpose of manufacturing and selling candies under the Guth label," etc. At that time he was widely known to the trade as a candy manufacturer of superior skill, and his name was a valuable asset in connection with that business. He was made president of the new company, became later the owner of 80-odd per cent. of its common stock, and dominated its activities until he disposed of his stock, in February, 1913, for several times what it cost him. A few months afterwards he withdrew from the company altogether and started another concern for the manufacture of candy, known as the Chocolate Products Company, which he appears to control.

In exploiting this venture, by circulars and otherwise, he took pains to inform the trade that he had severed all connection with the Guth Chocolate Company, had launched an entirely new enterprise, and was making his goods by new processes and machinery. But he made prominent in every way the name of Guth, and evidently relied for success upon the popularity of candies associated with that name. True, he made use of his full name, "Charles G. Guth," instead of the surname "Guth," or "Au Guth," which he had previously employed; but it is the surname which catches the public, and few purchasers would notice the difference between one form and the other. In the nature of things confusion was inevitable.

We are unable to distinguish the case in hand from the Le Page Cases above cited, and others of similar import, which fully sustain the decree of the trial court. When, in 1909, Guth sold, among other things, "the use of the name Guth for the purpose of manufacturing and selling candies under the Guth label," he dispossessed himself of the right thereafter to use his name as a trade-mark, and no valid reason appears for not holding him to his obligation. The commercial value of his name as a trade-mark is confined to the surname Guth, and the contract he entered into was not less effectually broken because he used his full name, instead of the surname only, on the packages of candy which he put upon the market. Stripped of all pretenses, what he really seeks to do is to keep for himself the essential thing he sold, and also keep the price he got for it. A court of equity may properly prevent such manifest unfairness. The injunction granted goes no further than to enforce the agreement which Guth actually made in regard to the use of his name, and he cannot justly complain of a decree which compels him to abide by his bargain.

Affirmed.